1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TOMMIE L. MYLES,

            Plaintiff,

      v.

BANK OF AMERICA, INCORPORATED,

            Defendant.

Case No.  16-cv-01143-DMR

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 11

Defendant Bank of America, N.A.[1] ("Defendant" or "Bank of America") moves the court to dismiss pro se Plaintiff Tommie L. Myles's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  [Docket No. 11].  The complaint alleges a single claim for relief for violation of the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1962(c). Having considered the parties' submissions and oral argument, the court grants Defendant's motion.[2]

I.      **FACTUAL BACKGROUND**

      When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).  The following facts are based on the complaint, the exhibits attached to the complaint, and judicially noticeable documents.  Plaintiff's allegations are somewhat difficult to follow, but appear to fall into two time frames: 2012, and 2014 to 2015.

      Plaintiff has a first lien mortgage with Bank of America for the property located at 631

---

[1] According to Defendant, Bank of America, N.A. was erroneously sued as "Bank of America, Incorporated."

[2] Plaintiff also filed an opposition to a motion for summary judgment.  [Docket No. 18.]  Because no such motion was filed, the court does not consider this brief.

United States District Court
Northern District of California

1    13th Street, Richmond, California 94801 ("the Property").  Plaintiff alleges that in 2012, he

2    qualified for and completed a five-month trial loan modification.  He requested that Defendant

3    make the modification permanent, but Defendant refused.  Plaintiff alleges that at some point in

4    2012, Defendant delayed the time to respond to trial payments by two months.  Plaintiff further

5    asserts that Defendant refused to acknowledge Plaintiff's letters, (*see* Compl., Exs. C and D),

6    which requested that Defendant apply the metrics dictated in a consent judgment to grant him a

7    permanent loan modification.  Plaintiff appears to refer to the consent judgment entered in *United*

8    *States v. Bank of Am. Corp.*, No. 12–cv–00361, 2012 U.S. Dist. LEXIS 188892 (D.D.C. Apr. 4,

9    2012) ("Consent Judgment).  Plaintiff contends that these actions caused Plaintiff to pay $300

10   more per month than what he would have had to pay had he been granted a permanent loan

11   modification at that time.  In March 2012, Plaintiff filed a state court action in Contra Costa

12   Superior Court entitled *Myles v. Bank of America, N.A.*, Case No. C12-00706 ("*Myles I*") (RJN

13   Ex. 1).  *Myles I* was dismissed on June 1, 2012.  RJN Ex. 3.

14       Moving forward to 2014, Defendant posted a July 22, 2014 foreclosure sale date for the

15   Property.  RJN Ex. 10.  At the time, Plaintiff was attempting to work out a loan modification with

16   Defendant.  On July 14, 2014, Plaintiff filed another complaint in the Contra Costa County

17   Superior Court to stop the foreclosure sale and to pursue a loan modification under the Consent

18   Judgment.  *See Myles v. Bank of America Corporation et al.*, Case No. C14-01318 ('*Myles II*')

19   (RJN Ex. 2).

20       On August 15, 2015, Plaintiff received a loan modification offer for the Property.  Plaintiff

21   alleges that the loan modification contained an error.  He asserts that the Clarity Commitment,

22   which was part of the loan summary, stated that the loan was based on a $70,515 deferred

23   principle that would need to be paid if the loan was refinanced, sold, or transferred.  Plaintiff

24   alleges that the loan summary conflicted with a separate section of the loan modification document

25   entitled Section 4: Additional Agreements Section H ("the Garn St. Germain Act, 12 U.S.C.

26   Section 1701j-3").[3]  *Id.*  In Plaintiff's view, the error in the loan modification document was that it

27

28   [3] Plaintiff's complaint attaches letters discussing "Section 4: Additional Agreements § H" and the
     Garn St. Germain Act, but does not attach the original loan modification document.

2

1    did not include section "d" of the Garn St. Germain Act, which provides for "exemption of

2    specified transfers." Compl. at 4-5.   According to Plaintiff, the combined income of Plaintiff and

3    his grandson served as a primary hardship factor that should have enabled the approval of the

4    forty-year loan modification.  *Id*.  Plaintiff states that section "d" of the Garn St. Germain Act

5    would protect Plaintiff's relatives from paying the deferred principle should Plaintiff die during

6    the forty-year term of the loan modification.

7        Plaintiff wrote letters requesting that Defendant fix the loan modification error and

8    promptly return the documents for Plaintiff's signature, as acceptance of the loan modification was

9    contingent on it being signed, notarized, and returned by August 31, 2015.  *See* Compl. at 3; Exs.

10   A, B.  Plaintiff alleges that Bank of America did not fix the error.  Defendant later notified

11   Plaintiff that the loan modification offer had been withdrawn because Plaintiff had not returned the

12   signed document by the August 31 deadline.

13       According to Plaintiff, on December 7, 2015, Defendant sold the first lien loan to NRZ

14   Pass-Through Trust VI c/o Citibank, N.A.  Plaintiff alleges that Defendant tried to "disguise the

15   true value of a modified loan that was destined for Fannie Mae," and subsequently "off-load[ed]"

16   it to "an unsuspecting buyer."  Plaintiff alleges that this "bad faith behavior" violates the terms of

17   the Consent Judgment and is akin to a "racketeering practice" that has prevented Plaintiff and

18   other home-owners from obtaining "clean, undisguised loan modifications."  Compl. at 5.

19       On March 8, 2016, Plaintiff filed the instant action asserting one claim for relief based on a

20   civil RICO violation.  Plaintiff seeks injunctive and equitable relief, as well as treble damages for

21   the loss of a permanent loan modification.  Plaintiff also seeks penalties for conduct in the loan

22   modification process dating back to 2012.

23   **II.    LEGAL STANDARD**

24       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

25   sufficiency of the claims alleged in the complaint.  *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199–200

26   (9th Cir. 2003).  The court may dismiss the case "only where there is no cognizable legal theory or

27   an absence of sufficient facts alleged to support a cognizable legal theory."  *Shroyer v. New*

28   *Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation and quotation marks

United States District Court
Northern District of California

3

1   omitted).

2          When a complaint presents a cognizable legal theory, the court may grant the motion if the

3   complaint lacks "sufficient factual matter to state a facially plausible claim to relief." *Id.* (citing

4   *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  A claim has facial plausibility when a "plaintiff pleads

5   factual content that allows the court to draw the reasonable inference that the defendant is liable

6   for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

7           For purposes of Rule 12(b)(6) review, the court reviews documents incorporated into the

8   complaint, as well as judicially noticeable material.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*

9   551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other

10   sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular,

11   documents incorporated into the complaint by reference, and matters of which a court may take

12   judicial notice."); *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (incorporation by

13   reference); *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1006, 1016 n.9 (9th Cir. 2012) (judicial

14   notice).

15          "[A] court may take judicial notice of 'matters of public record,'" *Lee v. City of Los*

16   *Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279,

17   1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a

18   complaint and whose authenticity no party questions, but which are not physically attached to the

19   pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary

20   judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by*

21   *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

22   **III.    REQUEST FOR JUDICIAL NOTICE**

23          The court first considers Bank of America's unopposed request for judicial notice.  The

24   court takes notice of the court documents provided by Defendant in Exhibits 1 through 6.  RJN,

25   Exs. 1-6.  A court may take judicial notice of complaints, court orders, and judgments filed in

26   another litigation.  *Kourtis v. Cameron*, 419 F.3d 989, 995 n.3 (9th Cir. 2005); *see also Burbank-*

27   *Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998),

28   *abrogated on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008).

United States District Court
Northern District of California

4

1      The court also takes judicial notice of the documents related to the Deed of Trust and

2   Notice of Trustee's Sale.  RJN, Exs. 7-11. Under Federal Rule of Evidence 201(b), publicly-

3   recorded real estate instruments and notices, including deeds of trust and default and foreclosure

4   notices, are the proper subject of judicial notice, unless their authenticity is subject to reasonable

5   dispute.  *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir.

6   2004);  *Petrovich v. Ocwen Loan Servicing, LLC*, No. 15-CV-00033-EMC, 2016 WL 555959, at

7   *3 (N.D. Cal. Feb. 12, 2016) (taking judicial notice of assignment of deed of trust).

8   **IV.    ANALYSIS**

9      Defendant moves to dismiss Plaintiff's complaint on three grounds: 1) the present action is

10   barred by res judicata and collateral estoppel because the allegations in the complaint have already

11   been adjudicated in a prior state court action; 2) Plaintiff has no standing to assert claims under the

12   Consent Judgment; and 3) Plaintiff fails to state a claim under the RICO statute.  Because a state

13   court held that Plaintiff lacks standing to assert claims to enforce the Consent Judgment, the court

14   will address the first two intertwined arguments together.

15   **A.    Res Judicata and Collateral Estoppel**

16      Defendant argues that Plaintiff may not attempt to recover for conduct alleged to have

17   occurred before July 29, 2015, because on that date, the Contra Costa County Superior Court

18   dismissed Plaintiff's nearly identical action.  Plaintiff previously filed two state court actions

19   against "Bank of America" entities.  *See Myles I* and *Myles II*, described above. Defendant

20   contends that *Myles II* bars Plaintiff's claims related to the loan modification process for conduct

21   that occurred prior to July 29, 2015.

22      In *Myles II*, Plaintiff named "Bank of America Corporation" ("BAC") as one of several

23   defendants, and alleged three identical causes of action for "intentional tort."  BAC demurred to

24   the original complaint, and the court sustained the demurrer with leave to amend.  RJN Ex. 4.

25   Plaintiff then filed a pleading entitled "Amended Cause of Action CCP § 430.10(f), Bad faith

26   Breach of Consent Judgment: Civil Action No. 120361 in the United States District Court for the

27   District of Columbia."  RJN Ex. 2.  In this amended complaint, Plaintiff alleged that BAC was

28   liable to him based on three alleged violations of sections of the Consent Judgment.  *Id.* at 5.

United States District Court
Northern District of California

1    Specifically, he alleged that BAC 1) failed to provide a timely status report after he completed a

2    five-month trial modification period, 2) ignored the Consent Judgment metrics for calculating an

3    affordable loan modification for him, and 3) filed foreclosure sale documents without providing a

4    mortgage modification for a borrower facing hardship. *Id.* at 5-6.  The state court dismissed the

5    first amended complaint in *Myles II* with prejudice, holding that Plaintiff, as an individual

6    borrower, lacked standing to sue for breach of the Consent Judgment.  RJN Ex. 4.  The state court

7    entered judgment, and the time to appeal has passed.

### 1.      Collateral Estoppel

9     "Collateral estoppel precludes relitigation of issues argued and decided in prior

10   proceedings." *Diruzza v. Cty. of Tehama*, 323 F.3d 1147, 1152 (9th Cir. 2003) (quoting *Lucido v.*

11   *Super. Ct.*, 51 Cal. 3d 335, 341 (1990)).  Under California law, collateral estoppel bars litigation

12   if: (1) the issue sought to be precluded is identical to that decided in a former proceeding, (2) the

13   issue was actually litigated in the former proceeding, (3) the issue was necessarily decided in the

14   former proceeding, (4) the decision in the former proceeding was final and on the merits, and (5)

15   the party to be estopped was a party to the former proceeding or in privity with a party to the

16   former proceeding. *Id.*

17        In *Myles II*, the state court dismissed the case with prejudice, finding that Plaintiff, as an

18   individual borrower, lacked standing to sue for breach of the Consent Judgment.  Defendant has

19   satisfied the first four prongs of the requirements for collateral estoppel, as the issue of Plaintiff's

20   standing to enforce the Consent Judgment is identical to the issue that was presented, was

21   necessarily decided, and was actually litigated to a final judgment in *Myles II*.  Finally, Plaintiff,

22   the party to be estopped, was a party to the prior state action.  Plaintiff is therefore bound by the

23   state court's judgment and cannot now re-litigate the issue of his standing to enforce the Consent

24   Judgment.

### 2.      Res Judicata

26        The doctrine of res judicata bars litigation in a subsequent action where a plaintiff raised,

27   or could have raised, the same claims in a prior action that resulted in a final judgment on the

28   merits. *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 713 (9th Cir. 2001); *W. Radio*

United States District Court
Northern District of California

1    *Servs. Co. v. Glickman,* 123 F.3d 1189, 1192 (9th Cir. 1997).  Res judicata "has the dual purpose

2    of protecting litigants from the burden of relitigating an identical issue with the same party or his

3    privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co.*

4    *v. Shore,* 439 U.S. 322, 326 (1979).  Because "[r]es judicata prevents litigation of all grounds for,

5    or defenses to, recovery that were previously available to the parties, regardless of whether they

6    were asserted or determined in the prior proceeding[, it] thus encourages reliance on judicial

7    decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Brown v.*

8    *Felsen,* 442 U.S. 127, 131 (1979).

9         To determine whether res judicata precludes a plaintiff's claims, a federal court applies the

10   res judicata rules of the state that issued the judgment.  *Robi v. Five Platters, Inc.,* 838 F.2d 318,

11   322 (9th Cir. 1988).  Under California law, three requirements must be met to preclude a claim: 1)

12   the second lawsuit must involve the same "cause of action" as the first one, 2) there must have

13   been a final judgment on the merits in the first lawsuit,[4] and 3) the party to be precluded must

14   itself have been a party, or in privity with a party, to that first lawsuit.  *San Diego Police Officers'*

15   *Ass'n v. San Diego City Employees' Ret. Sys.*, 568 F.3d 725, 734 (9th Cir. 2009).  Because Plaintiff

16   was a party in *Myles II* and because that judgment has now become final, the only remaining

17   question is whether this case involves the same "cause of action" as *Myles II.*

18        California does not require that the claims be identical for res judicata to preclude re-

19   litigating those claims. "Res judicata precludes piecemeal litigation by splitting a single cause of

20   action or relitigation of the same cause of action on a different legal theory or for different relief."

21   *Mycogen Corp. v. Monsanto Co.,* 28 Cal. 4th 888, 897 (2002) (citation and internal quotation

22   marks omitted).  "If the same primary right is involved in two actions, judgment in the first bars

23   consideration not only of all matters actually raised in the first suit but also all matters which could

24   have been raised." *Gonzalez v. Cal.  Dept. of Corrections,* 739 F.3d 1226, 1233 (9th Cir. 2014)

25   (quoting *Eichman v. Fotomat Corp.,* 147 Cal. App. 3d 1170, 1175 (1983)).  "[U]nder the primary

26

27   _____

[4] Under California law, for purposes of applying res judicata, a dismissal with prejudice is the
28   equivalent of a final judgment on the merits. *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788,
793 (2010).

United States District Court
Northern District of California

1    rights theory, the determinative factor is the harm suffered.  When two actions involving the same

2    parties seek compensation for the same harm, they generally involve the same primary right."

3    *Boeken,* 48 Cal. 4th at 798.

4            In the present case, Plaintiff appears to repeat his allegations from *Myles II* that Defendant

5    failed to apply the "metrics" from the Consent Judgment to his 2012 loan modification.  *Compare*

6    Compl. at 7 (alleging that the Bank failed to "apply the metrics dictated in the Consent Judgment

7    to [offer] a permanent loan modification") and Compl. at 6 ("since the fourth quarter of 2012 until

8    August 2015 the Bank has knowingly ignored and violated the Judgment and HAMP mortgage

9    regulation") *with* First Am. Compl. in *Myles II*, RJN Ex. 2 at 5-6 ("Defendants willfully ignored

10   the required metrics by which an affordable loan modification could be calculated and offered to

11   Plaintiff.  In the Consent Judgment the metrics are found in Exhibit D . . .").

12           While not entirely clear, Plaintiff's single claim under RICO appears to be based on

13   alleged violations of the Consent Judgment.  Plaintiff contends that by "refusing to fix the legal

14   defect in the loan modification document . . .  and violating the specific dictates of the Consent

15   Judgment, Defendant has displayed a 'pattern of racketeering activity' against Plaintiff."  FAC at

16   8.  Plaintiff's opposition to this motion confirms this, as it states that the Defendant's "bad faith

17   behavior violates HAMP regulations and the terms of the Consent Judgment," and that such action

18   "is a racketeering practice."  Opp'n to Mot. to Dismiss [Docket No. 16] at 6.  Additionally,

19   Plaintiff contends that "the Statement of Facts and the claims in Case MSC 14-01318 [are] a good

20   example of how Bank of America, Inc. is charged with violation the terms of the Consent

21   Judgment regarding loan modifications."  *Id.* at 7.

22           It is likely that Plaintiff's current case is barred by res judicata.  However, because

23   Plaintiff's single RICO claim for relief is not entirely clear, the court cannot definitively rule on

24   the application of res judicata at this juncture.

25       **B.      Adequacy of Plaintiff's Civil RICO Claim**

26           Plaintiff's complaint alleges a single claim for violation of RICO, 18 U.S.C. § 1962(c).[5]

27   _____

28   [5] Plaintiff also cites 18 U.S.C. § 1962(c) and 15 U.S.C. § 15 to request injunctive relief for the
     alleged violations of 18 U.S.C. § 1962(c).  Compl. at 9.

United States District Court
Northern District of California

He asserts that "since the fourth quarter of 2012 until August 2015 the [Defendant] has knowingly

ignored and violated the [Consent] Judgment and HAMP mortgage regulation." Compl. at 6. He

contends that "[t]his behavior violates civil RICO: Title 18 U.S.C. § 1962(c) and demonstrates a

'pattern of racketeering activity' in the home loan business." *Id.* (emphases omitted).

The civil RICO Act makes it "unlawful for any person employed by or associated with any

enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct

or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a civil RICO

claim, a plaintiff must allege facts showing: "1) conduct 2) of an enterprise 3) through a pattern 4)

of racketeering activity (known as predicate acts) 5) causing injury to plaintiff's business or

property." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir.

2005) (internal quotation marks and citation omitted).

"Racketeering activity" is defined as a number of specific criminal acts under federal and

state laws.[6] 18 U.S.C. § 1961(1). A "'pattern of racketeering activity' requires at least two acts of

---

[6] "Racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891-894 (relating to extortionate credit transactions), section 1028 (relating to fraud and related activity in connection with identification documents), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1351 (relating to fraud in foreign labor contracting), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), sections 1461-1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1542 (relating to false statement in application and use of passport), section 1543 (relating to forgery or false use of passport), section 1544 (relating to misuse of passport), section 1546 (relating to fraud and misuse of visas, permits, and other documents), sections 1581-1592 (relating to peonage, slavery, and trafficking in persons), sections 1831 and 1832 (relating to economic espionage and theft of trade secrets), section 1951 (relating to interference with

United States District Court
Northern District of California

1    racketeering activity, one of which occurred after the effective date of this chapter and the last of

2    which occurred within ten years (excluding any period of imprisonment) after the commission of a

3    prior act of racketeering activity." *Id.* § 1961(5).  Although Plaintiff alleges that Defendant

4    engaged in a "pattern of racketeering activity," he does not identify Defendant's alleged acts that

5    qualify as predicate "racketeering activities" under the statute.

6        Additionally, Plaintiff completely fails to allege a RICO enterprise, a required element of

7    his claim.  "[T]o establish liability under § 1962(c) one must allege and prove the existence of two

8    distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred

9    to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).  An

10   enterprise "includes any individual, partnership, corporation, association, or other legal entity, and

11   any union or group of individuals associated in fact although not a legal entity."  18 U.S.C.

---

13   commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to
     interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare
14   fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section
     1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in
15   monetary transactions in property derived from specified unlawful activity), section 1958 (relating
     to use of interstate commerce facilities in the commission of murder-for-hire), section 1960
16   (relating to illegal money transmitters), sections 2251, 2251A, 2252, and 2260 (relating to sexual
     exploitation of children), sections 2312 and 2313 (relating to interstate transportation of stolen
17   motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property),
     section 2318 (relating to trafficking in counterfeit labels for phonorecords, computer programs or
18   computer program documentation or packaging and copies of motion pictures or other audiovisual
     works), section 2319 (relating to criminal infringement of a copyright), section 2319A (relating to
19   unauthorized fixation of and trafficking in sound recordings and music videos of live musical
     performances), section 2320 (relating to trafficking in goods or services bearing counterfeit
20   marks), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts),
     sections 2341-2346 (relating to trafficking in contraband cigarettes), sections 2421-24 (relating to
21   white slave traffic), sections 175-178 (relating to biological weapons), sections 229-229F (relating
     to chemical weapons), section 831 (relating to nuclear materials), (C) any act which is indictable
22   under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to
     labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any
23   offense involving fraud connected with a case under title 11 (except a case under section 157 of
     this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving,
24   concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as
     defined in section 102 of the Controlled Substances Act), punishable under any law of the United
25   States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting
     Act, (F) any act which is indictable under the Immigration and Nationality Act, section 274
26   (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting
     certain aliens to enter the United States), or section 278 (relating to importation of alien for
27   immoral purpose) if the act indictable under such section of such Act was committed for the
     purpose of financial gain, or (G) any act that is indictable under any provision listed in section
28   2332b(g)(5)(B).  18 U.S.C. § 1961(1).

1    § 1961(4).  Here, Plaintiff only alleges that Bank of America, the sole defendant, engaged in a

2    "pattern of racketeering activity," and fails to sufficiently plead the enterprise element of a RICO

3    claim.  Compl. at 8.

4              A RICO "enterprise" must constitute an entity distinct from the RICO "person."  *Living*

5    *Designs,* 431 F.3d at 361; *River City Markets, Inc. v. Fleming Foods W., Inc.,* 960 F.2d 1458,

6    1461 (9th Cir. 1992) (stating that "a single individual or entity cannot be both the RICO enterprise

7    and an individual RICO defendant"); *Walter v. Drayson,* 538 F.3d 1244, 1247 (9th Cir. 2008); *Ice*

8    *Cream Distribs. of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, No. 09-5815 CW, 2010

9    WL 3619884, at *5 (N.D. Cal. Sept. 10, 2010), *aff'd*, 487 F. App'x 362 (9th Cir. 2012) (finding

10   that a § 1962(c) claim could not be based on a RICO enterprise comprised of a corporation, a

11   wholly-owned subsidiary, and an employee of that corporate family where those entities were also

12   plead as the RICO persons, dismissing claims for violation of § 1962(c)); *see also United Food &*

13   *Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d

14   849, 853-54 (7th Cir. 2013) (complaint did not allege that defendants were engaged in affairs of

15   separate enterprise rather than carrying out own affairs).

16             In sum, Plaintiff's allegations regarding the RICO violation are conclusory and do not

17   adequately plead any of the elements of a RICO claim.  Specifically, Plaintiff fails to plead the

18   existence of an enterprise, the nature of the alleged enterprise, Defendant's purported role in the

19   enterprise, or a pattern of racketeering activity.  Nor does the complaint sufficiently allege the

20   predicate acts that form the basis of the pattern of racketeering activity.  For these reasons,

21   Plaintiff's RICO claim must be dismissed.  *Torio v. Wells Fargo Bank, N.A.*, No. 5:16-CV-00704-

22   HRL, 2016 WL 2344243, at *8 (N.D. Cal. May 4, 2016) (dismissing RICO claim based on theory

23   that defendants had no right to foreclose due to alleged flaws in securitization of the loan where

24   plaintiff failed to sufficiently plead any of the elements of the claim).

25             Where the complaint has been filed by a pro se plaintiff, as is the case here, courts must

26   "construe the pleadings liberally . . . to afford the petitioner the benefit of any doubt." *Hebbe v.*

27   *Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  A district court acts within its

28   discretion to deny leave to amend when amendment would be futile, when it would cause undue

United States District Court
Northern District of California

1    prejudice to the defendant, or when it is sought in bad faith.  *See Bowles v. Reade*, 198 F.3d 752,

2    757 (9th Cir. 1999).  Because the court may not "dismiss a pro se complaint without leave to

3    amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by

4    amendment,'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation omitted), leave to

5    amend is appropriate to provide Plaintiff an opportunity to allege facts supporting a plausible

6    RICO claim that does not trigger application of res judicata.  Plaintiff is reminded that collateral

7    estoppel prevents him from basing any of his claims on Defendant's alleged failure to comply with

8    the Consent Judgment.

9    ## V.    CONCLUSION

10   For these reasons, the court grants Defendant's motion to dismiss Plaintiff's complaint.

11   Plaintiff is granted leave to amend his complaint to cure the deficiencies noted in this order.  On

12   August 4, 2016, the court referred this matter to the Federal Pro Bono Project to identify an

13   attorney who could provide limited representation to Plaintiff in the course of mediation.  The

14   order also stayed proceedings until four weeks from the date of appointment of pro bono counsel.

15   [Docket No. 25].  Unfortunately, despite its best efforts, the Federal Pro Bono Project was not able

16   to identify pro bono counsel to assist Plaintiff in this matter.  The court hereby lifts the stay.

17   Plaintiff shall file any amended complaint by **January 20, 2017**.  Failure to file an

18   amended complaint by **January 20, 2017** may result in dismissal of the case for failure to

19   prosecute.

20

21   **IT IS SO ORDERED.**

22   Dated: January 3, 2017



23   _____
         Donna M. Ryu
24       United States Magistrate Judge

United States District Court
Northern District of California

12